JONES, SNEAD, WERTHEIM & WENTWORTH, P.A.

## IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF NEW MEXICO

06 APR 27   PM 3: 34

CLERK-SANTA FE

MAX W. COLL, II, and CATHERINE JOYCE-COLL,
Trustees of the Residence Trust of Max W. Coll, II and
Catherine Joyce-Coll, for themselves and all others
similarly situated,

      Plaintiffs,

v.

      No. _____

CIV – 0 6 – 3 4 8    JH   ACT

FIRST AMERICAN TITLE INSURANCE COMPANY, and
Its affiliates and its agents in New Mexico;
NEW MEXICO PUBLIC REGULATORY COMMISSION;
JASON MARKS, DAVID W. KING, BEN R. LUJAN,
LYNDA M. LOVEJOY, AND E. SHIRLEY BACA,
Commissioners of the Public Regulatory Commission;
NEW MEXICO DEPARTMENT OF INSURANCE; and
ERIC SERNA, Superintendent of Insurance,

      Defendants.

_____

## NOTICE OF REMOVAL

    This is the notice of removal filed by Defendant, First American Title Insurance

Company ("First American"), under 28 U.S.C. § 1446.

## PROCEDURAL HISTORY

    1.    Plaintiffs, Max W. Coll and Catherine Joyce-Coll ("Plaintiffs"), filed their

"Class Action Complaint for Injunction Damages, Declaratory, and Other Relief"

("Complaint") in the First Judicial District Court, County of Santa Fe, New Mexico

entitled <u>Max W. Coll, II and Catherine Joyce-Coll, Trustees of the Residence of Trust of</u>

<u>Max W. Coll, II and Catherine Joyce Coll, for themselves and all others similarly situated</u>

<u>v. First American Title Insurance Company, and its affiliates and its agents in New</u>

JONES, SNEAD, WERTHEIM & WENTWORTH, P.A.

Mexico; New Mexico Public Regulatory Commission; Jason Marks, David W. King, Ben R. Lujan, Lynda M. Lovejoy, and E. Shirley Baca, Commissioners of the Public Regulatory Commission; New Mexico Department of Insurance; and Eric Serna, Superintendent of Insurance, Civil Action No. D-0101CV-2006-00689. Contemporaneously with the filing of the petition, Plaintiffs also filed written discovery requests, a motion for class certification, and a memorandum in support of class certification.  (A copy of pleadings and process served on First American are submitted with this Notice of Removal as Exhibit 1).

        2.     Service of the Complaint was effectuated on First American on March 29, 2006.

        3.     Besides First American, Plaintiffs also bring this action against Defendants, the New Mexico Public Regulatory Commission; Jason Marks, David W. King, Ben R. Lujan, Lynda M. Lovejoy, and E. Shirley Baca, as Commissioners of the Public Regulatory Commission; the New Mexico Department of Insurance; and Eric Serna, the Superintendent of Insurance in New Mexico (collectively, the "State Defendants").

### THE CLASS ACTION COMPLAINT

        4.     Plaintiffs' complaint avers that the New Mexico Title Insurance Act, N.M.S.A. 1978, §§59A-30-1 to 15, violates the anti-monopoly provisions of the New Mexico Constitution (Comp. ¶ 9).  Based on the purported unconstitutionality of the statute, Plaintiffs aver that the conduct of First American and the State Defendants amounts to anti-competitive price-fixing, even though Plaintiffs acknowledge that First

American's conduct complies with New Mexico law. Plaintiffs claim they are entitled to recover damages and other relief for themselves and a putative class. (Comp. ¶ 56; Prayer for Relief, ¶¶ D-K).

     5.     Predicated on the alleged unconstitutionality of the New Mexico Title Insurance Act, Plaintiffs appear to allege five purported causes of action:

     A.     violations of the New Mexico Unfair Insurance Practices Act, N.M.S.A. §§ 59A-16-1 through -30 by First American and the State Defendants (Comp. ¶ 56);

     B.     violations of the New Mexico Antitrust Act, N.M.S.A. §§ 57-1-1 through -19 (Comp. ¶ 56) by First American and the State Defendants;

     C.     violations of the New Mexico Unfair Trade Practices Act, N.M.S.A. §§ 57-12-1 through -22 by First American and the State Defendants (Comp. ¶ 56);

     D.     violations of the New Mexico Price Discrimination Act, N.M.S.A. 1978, § 57-14-1 through -9 (Prayer for Relief, ¶ G);[1] and

---

[1]      Although Plaintiffs do not refer to a violation of the New Mexico Price Discrimination Act, N.M.S.A. 1978, § 57-14-1 through -9, in the body of the Complaint, they do refer to N.M.S.A. 1978, §57-14-8(A) once as a basis for obtaining damages in their Prayer for Relief. (Prayer for Relief, ¶ G) ("Awarding plaintiffs and all members of the class damages against the defendant First American Title and its agents and others who have acted in concert with them, including actual, compensatory, punitive and statutory damages, such as provided by NMSA, 1978, § 57-1-3(A); **57-14-8(A);** and 57-12-10(B).") (emphasis is added).

JONES, SNEAD, WERTHEIM & WENTWORTH, P.A.

E.      a request for monetary damages against First America and for a declaratory judgment against the State Defendants for alleged violations of the New Mexico state constitution (Prayer for Relief, ¶¶ E, I).

6.      Plaintiffs aver that they "purchased a title insurance policy from First American Title on or about August 15, 2003, in order to purchase their home near Santa Fe, New Mexico.  They paid $2,430 for the policy.  They had no choice but to buy title insurance because title insurance is required in order to obtain mortgage financing." (Comp. ¶ 7).

7.      Plaintiffs allege that they "purchased another title insurance policy from First American Title on or about September 15, 2005, when they refinanced and remodeled their home."   (Comp ¶ 8).   Plaintiffs allege that they had "no choice to buy another title insurance policy, even though they already had title insurance on their home, because title insurance is required in order to obtain mortgage refinancing."   (*Id.*). Plaintiffs further allege that "defendants require consumers to buy duplicate title insurance every time they refinance their homes, even though they already have coverage and the underlying risks have not changed materially." (*Id.*).

8.      Plaintiffs allege that they "were forced to pay excessive and unreasonable prices for their title insurance because defendants have engaged in anti-competitive price fixing, which is a combination in restraint of trade contrary to the anti-monopoly provisions of the New Mexico Constitution." (Comp. ¶ 9).

9.      Plaintiffs also allege that "all of the title insurers in New Mexico charge exactly the same price for title insurance and related services.  There is no competition on

Notice of Removal – Page 4

the price of title insurance in New Mexico." (Comp. ¶ 10)  Plaintiffs further contend that "[a]ll of the title insurers in New Mexico issue the same policy forms, with no significant variations in the risks insured and the risks excluded from coverage.  There is no competition on the scope of title insurance coverage in New Mexico." (Comp. ¶ 11).

10.    Plaintiffs contend that "[a]s a result, the named plaintiffs and other similarly situated have been damaged because defendants' actions forced them to pay excessive and unreasonable prices for title insurance and related services, prevented them from shopping for and obtaining competitive prices and services, and prevented them from shopping for and obtaining better insurance coverage." (Comp. ¶ 12).

11.    Plaintiffs allege that "[t]he prices for their policy were fixed in restraint of trade by the concerted actions of defendants under the purported authority of the Title Insurance Act, N.M.S.A. 1978, §§59A-30-1 through – 15.  The defendant Regulators require all title insurance companies to charge the same rate and issues the same restricted policies..." (Comp. ¶ 14).

12.    Plaintiffs seek to represent a putative class of "[a]ll purchasers of title insurance from First American Title or its affiliates, covering property located in New Mexico, from March 29, 2000 forward." (Comp. ¶ 60 & Prayer for Relief, ¶¶ A-C).

13.    Plaintiffs contend that "there are thousands of class members... ." (Comp. ¶ 61).

14.    Plaintiffs allege that title insurance companies in New Mexico collected $111,000,000 in premiums in 2004.  (Comp. ¶ 22).  They further allege that "it is reasonable to expect" that these premiums would be 25% lower "if defendants ceased

their collusion and their activities in restraint of trade." (*Id.*). Plaintiffs seek disgorgement of the monetary amounts by which First American purportedly was "unjustly enriched" by the sale of these policies. (Prayer For Relief, ¶ H).

15. Based on their allegations that First American and the State Defendants violated the New Mexico Unfair Insurance Practices Act, the New Mexico Antitrust Act, the New Mexico Unfair Trade Practices Act (Comp. ¶ 56), and, apparently, the New Mexico Price Discrimination Act (Prayer for Relief ¶ G), the Plaintiffs seek the following relief: (1) an injunction; (2) a declaratory judgment; (3) writs of mandamus and prohibition; (4) actual, punitive, and statutory damages as provided by N.M.S.A. § 57-1-3(A); § 57-14-8(A); and § 57-12-10(B); (5) disgorgement of profits; (6) damages for violations of Plaintiffs and the class's constitutional rights; (7) costs and (8) attorneys' fees. (Prayer for Relief, ¶¶ D-K).

16. Importantly, Plaintiffs only seek monetary damages against First American, not the State Defendants. Moreover, in regard to the disgorgement of profits demanded directly from First American in their prayer for relief described in paragraph 14 above, Plaintiffs further contend that the $111,000,000 in premiums collected in one year (2004) would have been 25% lower if Defendants purported improper conduct had not occurred. (Comp. ¶ 22).

## THE CLASS ACTION FAIRNESS ACT

17. The Class Action Fairness Act ("CAFA") "is intended to expand substantially federal court jurisdiction over class actions." S.Rep. No. 109-14, at *43, *as*

JONES, SNEAD, WERTHEIM & WENTWORTH, PA

*reprinted in* 2005 U.S.C.C.A.N. 3, **41. Its provisions "should be read broadly, with a strong preference that interstate class actions be heard in federal court if properly removed by any defendant." *Id.* The Act was passed with the intent "that the named plaintiff(s) should bear the burden of demonstrating that a case should be remanded to state court." *Id.*; *see also* H. Rep. No. 108-144, at 37-39 (2003); H. Rep. No. 109-7 (2005).

18.     Pursuant to CAFA, when the number of putative class members defined in the Complaint exceeds 100, this Court has original jurisdiction over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which…any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

## THE COURT HAS ORIGINAL JURISDICTION OF THIS CASE

19.     The requirements for this Court's exercise of jurisdiction are clearly and unequivocally satisfied in this case.

20.     Plaintiffs are potentially citizens of any State, as Plaintiffs' class definition does not limit the putative class to New Mexico residents, but instead defines the class as "purchasers of title insurance . . . covering property located in New Mexico . . . ." (Comp. ¶ 60). Thus, there are clearly members of the putative class who are citizens of New Mexico and some who are citizens of other States.

21.     Plaintiffs allege that First American is a citizen of the State of California where it is incorporated and where it has its principal place of business.  (Comp. ¶ 3; *see also* Declaration of Charles H. Woods, ¶ 2 (attached hereto as Exh. 2)).

22.     For federal jurisdiction, CAFA requires minimal diversity, that is, at least one member of the class must be a citizen of a different state from any defendant. 28 U.S.C. § 1332(d)(2)(A).  Because there are members of the class who are citizens of a State different from a defendant, CAFA's requirement of minimal diversity is met. 28 U.S.C. § 1332(d)(2); Woods Decl., ¶ 2.  Even if the class is limited to New Mexico residents, minimal diversity still exists because First American is a citizen of California.

23.     There are clearly more than 100 putative class members.   In fact, Plaintiffs allege that there are "thousands" of members of the class.  (Comp. ¶ 61).  Thus, the requirement of 28 U.S.C. § 1332(d)(2)(5)(b) that there be at least 100 putative class members is satisfied.  (Woods Decl., ¶ 4, Ex. 1).

24.     A defendant seeking removal under CAFA must establish the aggregate amount in controversy exceeds $5,000,000, exclusive of costs and interest.  28 U.S.C. § 1332(d)(2); 28 U.S.C. § 1332(d)(6).  Where "a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction." S. Rep. 109-14, *42, *as reprinted in* 2005 U.S.C.C.A.N. 3, **40.

25.     Here there is no uncertainty; the alleged damages that Plaintiffs seek clearly exceed the $5,000,000 amount in controversy requirement.  Plaintiffs, in addition to a host of other damages, seek disgorgement of the monetary amounts by which First

JONES, SNEAD, WERTHEIM & WENTWORTH, P.A.

American purportedly was "unjustly enriched" by the sale of these policies.  (Prayer For Relief, ¶ H).  Based on Plaintiffs' allegations, this amounts to First American's share of 25% of the $111,000,000 in premiums collected for just one year of the class period (2004).  (Comp. ¶ 22).  This alone is sufficient to meet the amount in controversy requirement.  Put another way, Plaintiffs allege that in any given year over $27 million was overcharged by title insurance companies, like First American, as a result of their compliance with New Mexico's statutory regime related to the sale of such policies.  Moreover, for six of the class years (2000-2005), First American issued approximately 141,763 title insurance policies concerning real property located in New Mexico and collected premiums in New Mexico totaling approximately $150,726,976 (Woods Decl. ¶¶ 3-6, Ex.1).  Based on Plaintiffs' request for disgorgement of approximately 25% of this amount, the jurisdictional amount easily is met.

26.   This amount alone, based solely on Plaintiffs' complaint, satisfies the $5,000,000 amount in controversy required under 28 U.S.C. § 1332(d) for class actions removed under CAFA's "minimal diversity" jurisdictional requirements.

27.   Additionally, Plaintiffs also seek a vast array of other damages on behalf of the putative class of thousands.  They also seek equitable relief in numerous forms, compensatory damages, punitive damages, attorneys' fees and costs.  (Prayer for Relief, ¶¶ D-K).  Although First American disputes the breadth and propriety of Plaintiffs' class allegations, the putative class they seek to represent clearly seeks damages in excess of $5,000,000.00 in the aggregate. *See Fiore, Jr. v. First American Title Ins. Co.*, 2005 WL 3434074, * 3, Cause No. 05-CV-474-DRH (S.D. Ill., Dec. 13, 2005) (district court denied

motion to remand because defendant showed reasonable probability that the stakes exceeded the statutory minimum of $5,000,000)(attached hereto as Exhibit 3).

28.    Furthermore, Plaintiffs assert entitlement to damages under N.M.S.A. 1978, § 57-14-8(A), which allows a plaintiff to "recover threefold, the amount of damages sustained, costs of suit and a reasonable attorney fee." *Id.* Thus, the amount of alleged damages must be trebled for purposes of meeting the amount in controversy. *See, e.g., Woodmen of World Life Ins. Society v. Manganaro*, 342 F.3d 1213, 1218 (10th Cir. 2003) ("the potential award of attorneys' fees, in addition to compensatory and treble damages, should have been considered in determining whether Woodmen satisfied the jurisdictional amount").

29.    Moreover, when a complaint seeks punitive damages as here, they are properly considered in determining whether the jurisdictional amount in controversy has been satisfied. *Bell v. Preferred Life Assur. Soc'y*, 320 U.S. 238, 240, 64 S. Ct. 5, 6 (1943); *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1046 (3d Cir. 1993); *Hanna v. Miller*, 163 F.Supp.2d 1302, 1306 (D.N.M. 2001) ("Punitive damages may be considered in determining whether the jurisdictional amount requirement is satisfied.")(citing *Bell v. Preferred Life Assurance Soc'y,* 320 U.S. 238, 240, 64 S.Ct. 5, 88 L.Ed. 15 (1943); *Geoffrey E. Macpherson, Ltd. v. Brinecell, Inc.,* 98 F.3d 1241, 1245 (10th Cir.1996)).

30.    "[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case." S. Rep. No. 109-14, at 42.

31.    While First American does not concede that Plaintiffs' proposed putative class can be certified, the class Plaintiffs seek to represent creates, at a minimum, a reasonable probability that "the matter in controversy exceeds the sum of $5,000,000…." 28 U.S.C. § 1332(d)(2).    Therefore, jurisdiction under CAFA exists in this case. 28 U.S.C. § 1332(d)

## NO EXCEPTIONS APPLY

32.    Since the requirements of CAFA are clearly met, as shown above, Plaintiffs may seek to invoke exceptions to CAFA to defeat jurisdiction.  However, as demonstrated below, no exception applies in this case.

33.    As an initial matter, Plaintiffs, not First American, bear the burden of showing an exception to CFA jurisdiction applies. *See* S.Rep. No. 109-14, at *44 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, **41; *see also Robinson v. Cheetah Transp.*, *Robinson v. Cheetah Transp.*, No. Civ.A. 06-0005, 2006 WL 468820, *3 (W.D.La. Feb. 27, 2006) ("The Senate Report on CAFA clearly indicates that the burden of proving the application of CAFA's exceptions rests with the party opposing removal."). Although First American is not required to make <u>any</u> showing that a possible exception does not apply, as seen below, it is clear that no exception does apply.

### The State Action Exception Is Inapplicable

34.    Plaintiffs have named agencies and officials of the State of New Mexico as co-defendants and may assert that § 1332(d)(5)(A) (the "state action exception") applies.  28 U.S.C. § 1332(d)(5)(A)).  However, this state action exception is inapplicable because the State Defendants are not the "primary defendants" in this action, which is a

Notice of Removal – Page 11

JONES, SNEAD, WERTHEIM & WENTWORTH, PA.

prerequisite under the exception.  CAFA's drafters foresaw the possibility of a plaintiff attempting to invoke this exception by simply naming a state, a state agency, or a state official, and they foreclosed this tactic by requiring that the state be a primary defendant. S. REP. 109-14 (2005), *42, *as reprinted in* 2005 U.S.C.C.A.N. 3, **40 ("this provision should not become a subterfuge for avoiding federal jurisdiction.  In particular, plaintiffs should not be permitted to name state entities as defendants as a mechanism to avoid federal jurisdiction over class actions that largely target non-governmental defendants.").

35.     The state action exception precludes CAFA jurisdiction only when "the primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief."      28 U.S.C. § 1332 (d)(5)(A).

36.     The legislative history of CAFA warns that "[f]ederal courts should proceed cautiously before declining federal jurisdiction under the subsection 1332(d)(5)(A) 'state action' case exception, and do so only when it is clear that the primary defendants are indeed states, state officials, or other governmental entities against whom the 'court may be foreclosed from ordering relief.'"  S. REP. 109-14 (2005), *42, *as reprinted in* 2005 U.S.C.C.A.N. 3, **40.

37.     The legislative history of CAFA expressly states that "[f]or purposes of class actions that are subject to subsections 1332(d)(3) and (d)(5)(A), the Committee intends that 'primary defendants' be interpreted to reach those defendants who are the real 'targets' of the lawsuit — *i.e.*, the defendants that would be expected *to incur most of*

JONES, SNEAD, WERTHEIM & WENTWORTH, P.A.

*the loss if liability is found.*"  S. REP. 109-14, *43, 2005 U.S.C.C.A.N. 3,**41 (emphasis added).

38.   The State Defendants are not the primary defendants in this action.  First American is the only "primary defendant" because it is the only defendant against which money damages in any form are sought.  Unquestionably, First American is the defendant that would "incur most of the loss if liability is found."  S. REP. 109-14, *43, *as reprinted in* 2005 U.S.C.C.A.N. 3,**41.

39.   Plaintiffs aver that First American and the State Defendants violated the New Mexico Unfair Insurance Practices Act, the New Mexico Antitrust Act, the New Mexico Unfair Trade Practices Act, the New Mexico Price Discrimination Act, and the Constitution of the State of New Mexico (Comp. ¶ 56; Prayer for Relief,  ¶ G, I)).  However, Plaintiffs only seek monetary damages from First American, not from the State Defendants.  (Prayer for Relief,  ¶ G, requesting actual, punitive, and statutory damages against First American as provided by New Mexico Unfair Insurance Practices Act, the New Mexico Price Discrimination Act, and the New Mexico Unfair Trade Practices Act)). [2]

---

[2]      In their request for relief, Plaintiffs seek "damages against *defendants* for violating the plaintiffs' constitutional rights under the Constitution of the State of New Mexico." (Prayer for Relief, ¶ I) (emphasis added).  To the extent that Plaintiffs' use of "defendants" is intended to mean they request damages from both First American and the State Defendants, clear and well-settled New Mexico law regarding sovereign immunity precludes a suit for damages against the State Defendants based on a purported violation of a state constitutional right.  *Ford v. Dep't of Pub. Safety,* 119 N.M. 405, 412, 891 P.2d 546, 553 (N.M. Ct. App.1994) ("absent a waiver of immunity under the Tort Claims Act, a person may not sue the state for damages for violation of a state constitutional right.").  Because Plaintiffs are precluded from obtaining damages from the State Defendants

JONES, SNEAD, WERTHEIM & WENTWORTH, P.A.

40.     In fact, Plaintiffs have no ability to seek such damages from the State Defendants because the doctrine of sovereign immunity precludes Plaintiffs from bringing actions under the New Mexico Unfair Insurance Practices Act, the New Mexico Antitrust Act, the New Mexico Unfair Trade Practices Act, and the New Mexico Price Discrimination Act for damages against the State Defendants.  N.M.S.A. 1978, § 41-4-2(A) ("it is declared to be the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act and in accordance with the principles established in that act").  This immunity applies whether this action is pursued in a New Mexico state court or in federal court.  The statutory actions brought by Plaintiffs are not identified in the Tort Claims Act (or elsewhere) as actions for which sovereign immunity has been waived for a suit against State governmental entities and State officials.  *See* N.M.S.A. 1978, §§ 41-4-1 through 41-4-27.  Consequently, Plaintiffs cannot bring an action for damages or other monetary relief against the State Defendants based on alleged violations of these statutes.  *Valdez v. State*, 132 N.M. 667, 673, 54 P.3d 71, 77 (N.M. 2002) ("in order for a plaintiff to sue a governmental entity, the cause of action must fit within one of the exceptions under the TCA"); *see also Ford v. Dep't of Pub. Safety,* 119 N.M. 405, 412, 891 P.2d 546, 553 (N.M. Ct. App. 1994) ("absent a waiver of immunity under the Tort Claims Act, a person may not sue the state for damages for violation of a state constitutional right.").

---

under New Mexico law, notwithstanding Plaintiffs' use of the plural form of "defendant," First American is the only defendant that could incur any loss if liability is found.

Notice of Removal – Page 14

41.     Furthermore, the State Defendants are not within the statutory list of those subject to suit or to regulation under these statutes.

    A.     The New Mexico Unfair Insurance Practices Act is expressly limited in scope to "insurers, fraternal benefit societies, nonprofit health care plans . . ." and other *businesses* "subject to the superintendent's supervision under the Insurance Code." N.M.S.A. § 59A-16-1 (2006) (emphasis added).  There simply is no right of action against the State Defendants under this Act.

    B.     Similarly, the New Mexico Antitrust Act specifically exempts "the state" from its definition of regulated persons. N.M.S.A.  § 57-1-1.2 (2006); *see also Daddow v. Carlsbad Municipal School District*, 120 N.M. 97, 103, 898 P.2d 1235, 1241 (N.M. 1995) (the term 'state' includes state agencies for purposes of evaluating government immunity) (citing N.M.S.A. 1978, § 41-4-3(G)(1978). There is no right for an action against the State Defendants under this statute.

    C.     The New Mexico Unfair Trade Practices Act allows recovery only against "person[s]" who engage in unfair or deceptive trade practices. N.M.S.A.  § 57-12-10(B) (2006).  The statute defines "person[s]" as "natural persons, corporations, trusts, partnerships, associations, cooperative associations, clubs, companies, firms, joint ventures or syndicates."  N.M.S.A.  § 57-12-2(A) (2006).

JONES, SNEAD, WERTHEIM & WENTWORTH, P.A.

This definition excludes causes of action against government agencies and officers acting in their official capacity. *Id.* There is no right for an action against the State Defendants under this statute.

D. The New Mexico Price Discrimination Act, N.M.S.A. 1978, § 57-14-1 through -9 is expressly limited in scope to an actions against a "person," which is defined as "an individual, partnership, association, corporation, joint-stock company or business trust." *See* N.M.S.A. 1978, § 57-14-2.; *see also* N.M.S.A. 1978, § 57-14-3 (A) ("It is unlawful for any *person* engaged in commerce ...") (emphasis is added). There is no right of action against the State Defendants under this Act.

42. Therefore, under clear and well-settled New Mexico law, Plaintiffs can, at most, assert only an action for a declaratory judgment against the State Defendants. (*See* Prayer for Relief, ¶ D ("declaratory judgments establishing the rights and obligations of the parties with respect to the issues and disputes set forth in this complaint"). Yet even this claim is duplicative of their claim for a declaratory judgment against First American. The State defendants simply will not incur any "loss if liability is found." *See* S. REP. 109-14, *43, as reprinted in* 2005 U.S.C.C.A.N. 3,**41. Under these circumstances, the State Defendants are not and cannot be a "primary" defendant. Accordingly, the state action exception does not apply.

**JONES, SNEAD, WERTHEIM & WENTWORTH, P.A.**

### The Home State Controversy Exception Is Inapplicable

43.     Section 1332(d)(4)(B) (known as the "home state controversy exception") permits a district court to decline jurisdiction if (1) two-thirds or more of the members of the plaintiff class are citizens of the state in which the suit was filed <u>and</u> (2) the primary defendant is a citizen of the state in which the suit was brought.    28 U.S.C. § 1332(d)(4)(B).    This exception fails for two reasons.    First, since Plaintiffs' class definition includes residents of states other than New Mexico, Plaintiffs cannot show that two-thirds of the putative class are citizens of New Mexico.    Second, even if Plaintiffs could make that showing, the primary defendant, First American, is a citizen of California.

### The Interests of Justice Exception Is Inapplicable

44.     Section 1332(d)(3) (known as the "interests of justice exception") permits a district court to decline jurisdiction if (1) more than one-third, but fewer than two thirds of the members of the putative class are citizens of the state in which the suit was filed and (2) the primary defendant is a citizen of the state in which the suit was brought. 28 U.S.C. § 1332(d)(3).  The primary defendant (First American) is not a citizen of New Mexico.  Because First American is a citizen of California, this exception cannot apply.

### The Local Controversy Exception Does Not Apply

45.     Section 1332(d)(4)(A) (known as the "local controversy exception"), permits a district court to decline jurisdiction only if the following four circumstances are met: (1) greater than two thirds of the members of the putative class are citizens of the state in which the action was filed; (2) at least one defendant is a defendant from whom

Notice of Removal – Page 17

members of the putative class seek significant relief, whose alleged conduct forms a significant basis of the asserted claims, and who is a citizen of the state in which the action was filed; (3) the principal injuries resulting from the alleged conduct of each defendant were incurred in the state in which the action was filed; and (4) no other class action asserting the same or similar factual allegations has been filed against any of the defendants within the three years preceding the filing of the instant class action. 28 U.S.C. § 1332(d)(4)(A).

46.    This exception is inapplicable for two reasons: (1) since Plaintiffs' class definition includes residents of states other than New Mexico, Plaintiffs cannot show that two-thirds of the putative class are citizens of New Mexico; and (2) there is no in-state defendant from whom "significant relief" is sought by the class.  As shown previously, First American, an out-of-state defendant, is the only defendant from whom monetary damages or other monetary relief possibly could be recovered.  No monetary relief is sought from the State Defendants.   The only relief possible relating to the State Defendants is a declaratory judgment that is redundant of the declaratory judgment claim against First American.   Thus, the local controversy exception does not apply.  *See, generally, Robinson v. Cheetah Transp.*, No. Civ.A. 06-0005, 2006 WL 468820, *4 (W.D. La. Feb. 27, 2006) (local controversy exception is not applicable because in-state defendant is "as the Senate stated in its report, 'just small change' in comparison to what the putative class is seeking from the other defendants"); *see also* S. REP. 109-14 (2005), *41, as reprinted in* 2005 U.S.C.C.A.N. 3, **39 ("Even if the plaintiffs are truly seeking

relief from the dealers, that relief is just small change compared to what they are seeking from the manufacturer").

## **REMOVAL IS PROPER**

47.     This Notice of Removal is filed within thirty days of March 29, 2006, which is the time when First American was first served with the Complaint and summons.  Thus, it is timely filed.

48.     First American is not required to obtain the consent of any other defendant for the removal of this action. 28 U.S.C. § 1453(b); *see also Braud v. Transport Service Co. of IL.*, _ F.3d _, 2006 WL 880051, *4-5 (5th Cir. 2006) ("The language of CAFA is plain that any single defendant can remove (without the consent of other defendants) the entire class action (not merely the claims against that defendant)").

49.     This action is not one described in 28 U.S.C. § 1332 or § 1453 as being non-removable.

50.     First American will promptly file a copy of this Notice of Removal with the clerk of the First Judicial District Court, County of Santa Fe, New Mexico, and provide written notice of the removal to all other counsel of record.

51.     This Court embraces the county and court in which Plaintiffs filed this case.  Therefore, this action is properly removed to the District of New Mexico pursuant to 28 U.S.C. § 111.

52.     Pursuant to Fed. R. Civ. P. 81(c), First American will file its answer or present its other defenses or objections available under the Federal Rules within five days after the filing of this Notice of Removal.

Notice of Removal – Page 19

JONES, SNEAD, WERTHEIM & WENTWORTH, PA

FOR RELIEF Defendant, First American Title Insurance Company respectfully requests that this cause be removed from the First Judicial District Court, County of Santa Fe, New Mexico, that this Court exercise jurisdiction over this matter and grant it all other appropriate relief.

Respectfully submitted,

JONES, SNEAD, WERTHEIM & WENTWORTH, P.A.
Attorneys for Defendant First American Title Insurance Co.

By _Jerry Wertheim_____
JERRY WERTHEIM
JERRY TODD WERTHEIM
Post Office Box 2228
Santa Fe, NM  87504-2228
Telephone:  (505) 982-0011
Facsimile:  (505) 989-6288

BRYAN CAVE LLP
Charles A. Newman, MO Bar # 24735
Jason E. Maschmann, MO Bar # 46200
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, MO 63102
Telephone: (314) 259-2000
Facsimile:  (314) 259-2020

JONES, SNEAD, WERTHEIM & WENTWORTH, PA

### CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of the foregoing Notice Of

Removal was mailed to counsel listed below, by first-class mail, postage prepaid, this

27th day of April, 2006:

Victor R. Marshall, Esq.
Attorney for Plaintiffs
Victor R. Marshall & Associates, P.C.
12509 Oakland, NE
Albuquerque, NM  87122

Allen Ferguson, Esq.
(Acting) General Counsel
Office of General Counsel
Public Regulation Commission
P.O. Box 1269
Santa Fe, NM  87504

JERRY WERTHEIM

FIRST JUDICIAL DISTRICT COURT
COUNTY OF SANTA FE
STATE OF NEW MEXICO



FILED
FIRST JUDICIAL
DISTRICT COURT
2006 MAR 29  PM 2: 16

MAX W. COLL, II and CATHERINE JOYCE-COLL,
Trustees of the Residence Trust of Max W. Coll, II and
Catherine Joyce-Coll, for themselves and all others similarly situated,

      Plaintiffs,

v.                                No. D-0101CV-2006-00689

FIRST AMERICAN TITLE COMPANY, and
its affiliates and its agents in New Mexico;
NEW MEXICO PUBLIC REGULATORY
COMMISSION;  JASON MARKS, DAVID W. KING,
BEN R. LUJAN, LYNDA M. LOVEJOY, AND E. SHIRLEY BACA,
Commissioners of the Public Regulatory Commission;
NEW MEXICO DEPARTMENT OF INSURANCE;  and
ERIC SERNA, Superintendent of Insurance,

      Defendants.

## MOTION FOR LEAVE TO FILE MEMORANDUM IN EXCESS OF 10 PAGES

The plaintiffs Max Coll and Catherine Joyce-Coll respectfully move the Court for

leave to file a memorandum of approximately 15 pages in support of their motion for class

certification. The plaintiffs seek certification of a state wide class regarding the pricing of title

insurance in New Mexico.  These are matters of great public importance and some

complexity, and a few additional pages are necessary to address them adequately.

                  Respectfully submitted,

                  VICTOR R. MARSHALL & ASSOCIATES, P.C.

                  By:_____
                      Victor R. Marshall
                      Attorneys for Plaintiffs
                      12509 Oakland NE
                      Albuquerque, New Mexico  87122
                      505-332-9400 / 505-332-3793  FAX

Date:__3/29/06_____



FIRST JUDICIAL DISTRICT COURT
COUNTY OF SANTA FE
STATE OF NEW MEXICO

MAX W. COLL, II and CATHERINE JOYCE-COLL,
Trustees of the Residence Trust of Max W. Coll, II and
Catherine Joyce-Coll, for themselves and all others similarly situated,

       Plaintiffs,

v.                     No. D- 0101CV-2006-00689

FIRST AMERICAN TITLE COMPANY, and
its affiliates and its agents in New Mexico;
NEW MEXICO PUBLIC REGULATORY
COMMISSION; JASON MARKS, DAVID W. KING,
BEN R. LUJAN, LYNDA M. LOVEJOY, AND E. SHIRLEY BACA,
Commissioners of the Public Regulatory Commission;
NEW MEXICO DEPARTMENT OF INSURANCE; and
ERIC SERNA, Superintendent of Insurance,

       Defendants.

## SUMMONS
## THE STATE OF NEW MEXICO

TO:       FIRST AMERICAN TITLE COMPANY
ADDRESS:
GREETINGS:

      You are hereby directed to serve a pleading or motion in response to the complaint within thirty (30) days after service of this summons, and file the same, all as provided by law.

      You are notified that, unless you serve and file a responsive pleading or motion, the plaintiff will apply to the court for the relief demanded in the complaint.

Attorney or attorneys for plaintiff:  Victor R. Marshall, Esq.
                              Victor R. Marshall & Associates, P.C.
                              12509 Oakland NE
                              Albuquerque, NM 87109
                              505-332-9400 / 505-332-3793 Fax

WITNESS the Honorable **DANIEL A. SANCHEZ** district judge of the First Judicial District Court of the State of New Mexico, and the seal of the district court of Santa Fe County, this 29th day of _March_, 2006.

                             STEPHEN T. PACHECO
                             Clerk

              By: Monica Vigil
                          Deputy

FIRST JUDICIAL DISTRICT COURT
COUNTY OF SANTA FE
STATE OF NEW MEXICO

ENDORSED
First Judicial District Court

MAX W. COLL, II and CATHERINE JOYCE-COLL,
Trustees of the Residence Trust of
Max W. Coll, II and Catherine Joyce-Coll,
for themselves and all others similarly situated,

MAR 2 8 2006

Santa Fe, Rio Arriba &
Los Alamos Counties
-- P.O. Box 2268
Santa Fe, NM 87504-2268

Plaintiffs,

v.                                    No. D- 0101CV- 2006- 00689

FIRST AMERICAN TITLE COMPANY, and
its affiliates and its agents in New Mexico;
NEW MEXICO PUBLIC REGULATORY
COMMISSION; JASON MARKS, DAVID W. KING,
BEN R. LUJAN, LYNDA M. LOVEJOY, AND E. SHIRLEY BACA,
Commissioners of the Public Regulatory Commission;
NEW MEXICO DEPARTMENT OF INSURANCE; and
ERIC SERNA, Superintendent of Insurance,

Defendants.

## CERTIFICATE OF SERVICE

I hereby certify that the following documents were served on the above-referenced

defendants along with the Complaint herein:

1.    Motion for Leave to File Memorandum in Excess of 10 pages, with proposed
Order;

2.    Motion for Class Certification;

3.    Brief in Support of Plaintiffs' Motion for Class Certification;

4.    Initial Discovery to First American Title Company (original and one copy)

Respectfully submitted,

VICTOR R. MARSHALL & ASSOCIATES, P.C.

By: _____
Victor R. Marshall
Attorneys for Plaintiffs
12509 Oakland NE
Albuquerque, New Mexico 87122
505-332-9400 / 505-332-3793 FAX

Date: 3/29/06

FIRST JUDICIAL DISTRICT COURT
COUNTY OF SANTA FE
STATE OF NEW MEXICO

MAX W. COLL, II and CATHERINE JOYCE-COLL,
Trustees of the Residence Trust of
Max W. Coll, II and Catherine Joyce-Coll,
for themselves and all others similarly situated,

      Plaintiffs,

v.                             No.

FIRST AMERICAN TITLE COMPANY, and
its affiliates and its agents in New Mexico;
NEW MEXICO PUBLIC REGULATORY
COMMISSION; JASON MARKS, DAVID W. KING,
BEN R. LUJAN, LYNDA M. LOVEJOY, AND E. SHIRLEY BACA,
Commissioners of the Public Regulatory Commission;
NEW MEXICO DEPARTMENT OF INSURANCE; and
ERIC SERNA, Superintendent of Insurance,

      Defendants.

## INITIAL DISCOVERY TO FIRST AMERICAN TITLE COMPANY

      Pursuant to Rules 1-033 and 1-034, NMRA 2006, the plaintiffs propound the following initial discovery to First American Title Insurance Company ("First American Title"):

### INTERROGATORIES

      1.      In each of the last ten years, please state what policy benefits First American Title (or its affiliates) actually paid to policyholders on risks located in New Mexico, identifying the amount of each payment to policyholders separately from loss adjustment and other expenses.

      ANSWER:

2.      Referring to "Schedule P - Part 1 - Summary" of the 2005 Annual Statement which First American Title filed with the New Mexico Department of Insurance, please state what amounts were included for New Mexico, and how you arrived at those amounts.

ANSWER:

## REQUESTS FOR PRODUCTION

1.      Please produce all documents relating to your answers to the foregoing interrogatories.

RESPONSE:

Respectfully submitted,

VICTOR R. MARSHALL & ASSOCIATES, P.C.

By: _____
    Victor R. Marshall
    Attorneys for Plaintiffs
    12509 Oakland NE
    Albuquerque, New Mexico  87122
    505-332-9400 / 505-332-3793  FAX



FILED
FIRST JUDICIAL
DISTRICT COURT

2006 MAR 29 PM 2: 14

FIRST JUDICIAL DISTRICT COURT
COUNTY OF SANTA FE
STATE OF NEW MEXICO

MAX W. COLL, II and CATHERINE JOYCE-COLL,
Trustees of the Residence Trust of Max W. Coll, II and
Catherine Joyce-Coll, for themselves and all others similarly situated,

     Plaintiffs,

v.                      No. D-0101CV-2006-00689

FIRST AMERICAN TITLE COMPANY, and
its affiliates and its agents in New Mexico;
NEW MEXICO PUBLIC REGULATORY
COMMISSION;  JASON MARKS, DAVID W. KING,
BEN R. LUJAN, LYNDA M. LOVEJOY, AND E. SHIRLEY BACA,
Commissioners of the Public Regulatory Commission;
NEW MEXICO DEPARTMENT OF INSURANCE;  and
ERIC SERNA, Superintendent of Insurance,

     Defendants.

## <u>MEMORANDUM IN SUPPORT OF<br>PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>

The Plaintiffs Max Coll and Catherine Joyce-Coll have moved for certification of this

case as a class action.  This case should be certified as a class action under Rules 1-023(B),

subsections (1), (2), and (3), NMRA 2006, because it easily meets the requirements for

certification under each of these subsections.

The question of class certification must be decided on an expedited basis.  Rule 1-

023(C)(1), NMRA 2006 states:  "As soon as practicable after the commencement of an

action brought as a class action, the court shall determine by order whether it is to be so

maintained."  When deciding the issue of class certification, the courts do not adjudicate the

merits of plaintiffs' claims.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974).  *See also*

*Enfield v. Old Line Life Ins. Co. of Am.*, 2004-NMCA-115, ¶ 4, 136 N.M. 398, 98 P.3d 1048;

*Caridad v. Metro-North Commuter R.R.,* 191 F.3d 283, 291 n.10 (2d Cir. 1999) ("In deciding a

certification motion, district courts must not consider or resolve the merits of the claims of

the purported class."); *Vaszlavik v. Storage Technology Corp.,* 183 F.R.D. 264, 267 (D. Colo.

1998) ("Courts may not consider the merits of the claim at certification."); *Sollenbarger v.*

*Mountain States Tel. and Tel. Co.,* 121 F.R.D. 417, 422 (D.N.M. 1988) ("The district judge

cannot rule on the merits of the controversy when examining a Rule 23 motion.").

 Rule 23 sets forth various criteria for class certification, and all of them are clearly

present in the instant case.

### POINT I – This case meets the requirements of Rule 1-023(A), NMRA 2006.

 This case meets the requirements of Rule 1-023(A), NMRA 2006 as to numerosity,

commonality, typicality, and adequacy of representation.  Rule 1-023(A) sets forth threshold

requirements for class certification:

> One or more members of the class may sue or be sued as
> representative parties on behalf of all only if:  (1) the class is so
> numerous that joinder of all members is impracticable; (2) there
> are questions of law or fact common to the class; (3) the claims
> or defenses of the representative parties are typical of the claims
> or defenses of the class; and (4) the representative parties will
> fairly and adequately protect the interests of the class.

Each of these requirements is satisfied here.

### A. Numerosity

 The first requirement is that the class be so numerous that actual joinder of all

members is impracticable.  In this instance, there are thousands of consumers who have

purchased title insurance policies from First American Title since defendants initiated their

scheme of horizontal price fixing.  A class is so numerous if it is "large." *Riordan v. Smith*

2

*Barney*, 113 F.R.D. 60, 62 (N.D. Ill.1986). While there is no numerical cut off for class certification, as few as 25 or 30 members is sufficient to raise a presumption the joinder would be impracticable. *See EEOC v. Printing Indus. of Metropolitan Washington, D.C., Inc.*, 92 F.R.D. 51, 53 (D.D.C. 1981).

While the exact number of class members is not yet known, it clearly numbers in the thousands, as shown by regulatory reports. Every title insurance company operating in New Mexico is required to file an annual statement with the Department of Insurance. According to Schedule T filed by defendant First American Title Insurance Company for the year 2004, the company earned $26,778,637 in premiums on policies in New Mexico. In order to earn almost $27 million in premiums in one year, First American must have sold title insurance to several thousand consumers, thus clearly satisfying the criteria for numerosity.

### B.   Commonality

Rule 1-023(A)(2) requires that the case present some question of law or fact common to the class. "The commonality requirement of Rule 1-023(A)(2) is relatively easily met because it is deemed to require only the single issue be common to the class." *Berry v. Federal Kemper Life Assurance Co.*, 2004-NMCA-116, ¶ 42, 136 N.M. 454, 99 P.3d 1166. Commonality does not require all issues to be common to all class members, nor does it require commonality of both factual and legal issues. *See Yazzie v. Ray Vicker's Special Cars Inc.*, 180 F.R.D. 411, 416 (D.N.M 1998). "[E]ither common questions of law or fact presented by the class will be deemed sufficient." *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982).

3

This case presents questions of law and questions of fact that are common to all members of the proposed class, that is, all purchasers of title insurance from First American Title or its affiliates, covering property located in New Mexico, from March 29, 2000 forward.  One overriding legal question is whether defendants' behavior is contrary to the antitrust prohibitions which were incorporated into New Mexico's Constitution of 1912. The Constitution takes precedence over any statute or any interpretation of law by a state agency, *State ex rel. Clark v. Johnson*, 120 N.M. 562, 570, 904 P.2d 11, 19 (1995) and *State v. Nunez*, 2000-NMSC-013, ¶ 47, 129 N.M. 63, 2 P.3d 264, so the defendants cannot justify their actions merely by referring to the statute or relying on their own self-serving interpretations of the law.  Defendants' actions must be scrutinized and measured against the Constitution itself, not merely a statute or administrative regulations.

This case presents several basic questions of law that are common to all the proposed plaintiffs (and all of the named defendants as well).  Among these questions are:

1.      What is the meaning of the constitutional prohibition against "monopolies and restraints of trade"?

2.       Is the constitutional prohibition based upon the provisions of the Sherman Act and the Little Sherman Act?

3.       Why were these antitrust provisions placed in the Constitution itself, rather than left to statute?

4.       Is horizontal price fixing by competitors a "combination in restraint of trade," and is it a *per se* violation of the antitrust laws?

5.       If defendants' actions are invalid, what are the appropriate remedies?

4

6.      Does the Department of Insurance have the authority to issue a regulation that requires title insurers to pay at least 78% of their premium to title insurance agents as their "commission"?

7.      Does this regulation violate NMSA 1978, § 59A-2-9, which states that no insurance department regulation can extend, modify, or conflict with other statutes or law?

8.      Have the defendants violated § 59A-30-6(C), which provides that title insurance rates cannot be excessive or unreasonable in relation to the risks insured?

There are also common questions of fact, such as:

1.      Did defendants' actions cause plaintiffs to pay higher prices for title insurance than they would have paid if there had been price competition among title insurers and title insurance agents?

2.      Did defendants' actions prevent plaintiffs from obtaining broader and better coverage against title risks, if there had been competition on coverage among title insurers and title insurance agents?

3.      What injuries or damages have been suffered by class members?

4.      Does the insurance department cause title insurance consumers to pay rates which are excessive and unreasonable in relation to the risks insured?

Cases that involve standard form contracts present common issues which render them appropriate for class certification. *See Yazzie; Haroco Inc. v. American Nat'l Bank and Trust Co. of Chicago*, 121 F.R.D. 664 (N.D. Ill. 1988); *Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683 (N.D. Ga. 1983). In this instance, all the title insurers issued the identical title insurance policies, providing the same limited coverage, at the same uniform fixed price,

with no deviations allowed.  This absolute uniformity makes this case ideal for class

certification, because all title insurance consumers were subjected to the same treatment.

### C.    Typicality

The third provision of Rule 1-023(A) is that "the claims or defenses of the

representative parties are typical of the claims or defenses of the class."  A test of typicality is

whether "the claims of the class representative and class members are based on the same

legal or remedial theory."  *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988).  Here, the

legal theories advanced by the named plaintiffs apply with equal force to all members of the

proposed class.  The named plaintiffs claim, *inter alia*, that the defendants have acted in

violation of the New Mexico Constitution.  If so, then defendants have also acted

unconstitutionally towards all the other members of the class, because the provisions of the

state constitution are universal in effect; the constitution applies to all persons in the state.

Likewise, the plaintiffs allege that the defendants engaged in horizontal price fixing

by charging the same price to all consumers of title insurance.  The gist of plaintiffs' claim is

that they and all other consumers in New Mexico were forced to pay the same excessive

price for title insurance, because defendants acted in restraint of trade to destroy any price

competition.  If defendants' actions violate other applicable provisions of law, such as the

requirement that rates shall not be excessive or discriminatory, *see* NMSA 1978, § 59A-30-

6(C), then this claim applies to all class members as well, since all title insurance buyers were

charged the same rates.

### D.    Adequacy

There are two parameters for measuring adequacy.  First, the named plaintiff must

not have interests antagonistic to those of the proposed class, and second, the named

6

plaintiff's attorney must be qualified and competent to conduct the proposed litigation. *Sosna v. Iowa*, 419 U.S. 393, 403 (1975).

Mr. and Mrs. Coll have been injured in the same way as other members of the proposed class:  defendants have prevented them (and others) from shopping for and buying title insurance with better coverage at lower prices.  It was impossible for them or any other member of the class to obtain lower prices or better coverage, no matter how hard they might have tried, since defendants all took the mistaken position that the law prohibited any deviation, i.e. competition, in prices or coverage.  In the future, the defendants will continue to prevent the Colls and all other consumers from shopping for lower prices and better value in title insurance, unless the court grants relief.  The named plaintiffs seek to put an end to these collusive and unconstitutional practices, and to recover damages for past violations, so their interests are aligned with the interests of other class members.  Both the prospective and retrospective relief sought by Mr. and Mrs. Coll will necessarily advance the claims of other class members.  They have no interests antagonistic to any other class member, and they understand and are willing to perform the duties of class representative.

It should be noted that Mr. Coll has a long record of public service to New Mexico: he served for 32 years in the New Mexico House of Representatives, and for many years he served as Chairman of the House Appropriations and Finance Committee, which has primary responsibility for setting the budget for the State of New Mexico and all of its agencies.  Mr. Coll has also acted as a named plaintiff in several cases of great public interest and importance to the state.  *State ex rel. Coll v. Johnson*, 1999-NMSC-036, 128 N.M. 154, 990 P.2d 1277; *State ex rel. Clark v. Johnson*; *State ex rel. Clark v. State Canvassing Bd.*, 119 N.M. 12, 888 P.2d 458 (1995); *State ex rel. Coll v. Carruthers*, 107 N.M. 439, 759 P.2d 1380 (1988); *Vigil*

7

*v. Lujan*, 191 F. Supp. 2d 1273 (D.N.M. 2001); *Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546 (10th Cir. 1997).

Counsel is well qualified to conduct this litigation because it involves the interpretation and enforcement of the Constitution of the State of New Mexico. While there is an abundance of litigation involving the Federal Constitution, there is considerably less litigation involving provisions which appear only in the Constitution of the State. The New Mexico Constitution contains many provisions which are not found in the Federal Constitution or in the Constitutions of states admitted earlier to the union, such as the constitutional antitrust provisions at issue here. Since these provisions are derived from the Bill of Rights of 1851 and the Sherman Antitrust Act of 1890, such provisions often do not appear in other constitutions that were drafted earlier.

Counsel is well versed in the area of the New Mexico Constitution. In *State ex rel. Clark v. State Canvassing Board*, counsel successfully invoked the anti-log rolling provisions of the New Mexico 1912 Constitution to strike down a constitutional referendum that would have surreptitiously created a constitutional right to engage in video gambling. In *State ex rel. Clark v. Johnson*, counsel successfully petitioned the Supreme Court to strike down gaming compacts signed by then Governor Gary Johnson as a violation of the basic principles of separation of power contained in the 1912 Constitution. Both of these cases were, in effect, class actions where the representative plaintiff and counsel represented the interests of all citizens of New Mexico, in an *ex rel.* capacity. Counsel also has a working experience with the New Mexico Constitution from his 8 years of service in the State Senate of New Mexico, where he served for a time as co-chairman of the Senate Judiciary Committee. He also acted as a co-sponsor of the Constitutional Amendment which

8

provided for "merit selection" of judges.  N.M. Const. art. VI, § 33 (1988 amendment proposed by Senate Joint Resolution No. 1, § 1).  Counsel has 30 years of experience in litigating large civil cases.  In class action litigation, counsel has acted as consulting counsel for defendants in the following cases:  *Buscema v. Allstate Life Ins. Co.*, First Jud. Dist. Ct., No. D-101-CV-1999-2618; *Ferrell v. Allstate Ins. Co.*, Thirteenth Jud. Dist. Ct., No. D-1329-CV-2002-885; *Gallegos v. Geico General Ins. Co.*, Thirteenth Jud. Dist. Ct., No. D-1333-CV-2003-72; *Romero v. J.C. Penney Life Ins.*, First Jud. Dist. Ct., No. D-101-CV-2001-270; *McNabb v. New York Life Ins. Co.*, First Jud. Dist. Ct., No. D-101-CV-1999-2640; *Friesner v. North American Co. for Life and Health Ins.*, First Jud. Dist. Ct., No. D-101-CV-1999-2849; *Enfield v. Old Line Life Ins. Co.*, Second Jud. Dist. Ct., No. D-202-CV-2001-1367; *Wodzinski v. Peoples Benefit Life Ins. Co., f/k/a Providian Life and Health Ins. Co.*, First Jud. Dist. Ct., No. D-101-CV-2000-2816; *Smoot v. Physicians Life Ins. Co.*, First Jud. Dist. Ct., No. D-101-CV-2001-1207; *Azar v. Prudential Ins. Co. of America*, Thirteenth Jud. Dist. Ct., No. D-1314-CV-1999-613; *Kollecas v. State Farm Ins. Co.*, First Jud. Dist. Ct., No. D-101-1999-2620; *Nakashima v. State Farm Mutual*, Second Jud. Dist. Ct., No. D-202-2004-908; and *Cadigan v. Transamerica Occidental Life Ins. Co.,* First Jud. Dist. Ct., No. D-101-CV-1999-2619.

**POINT II – This case meets the requirements for class certification under Rule 1-023(B), NMRA 2006.**

This case also meets the requirements of Rule 1-023(B).  Beyond the requirements of Rule 1-023(A), a class action may be certified if it meets any one of the three parts of Rule 1-023(B).  This case qualifies for certification under all three of the provisions of Rule 1-023(B).

### A.    Rule 1-023(B)(1)(a)

Certification under Rule 1-023(B)(1)(a) is appropriate where:  (1) the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class.  The subparagraph "embraces cases in which the [defendant] is obliged by law to treat the class members alike[.]" 7A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1773, at 433 (1986) (interpreting identical federal rule).

Plaintiffs' request to certify a class under this subparagraph is precisely designed to meet the concerns posed by conflicting or varying adjudications in individual lawsuits. Here, plaintiffs want a ruling that protects all class members, and that will govern First American Title's conduct toward these class members.  Absent class certification under this subparagraph, the possibility is always present that individual adjudications might occur which could generate incompatible rulings as to First American Title's duties and thus, incompatible standards of conduct for First American Title.  Moreover, certification under Rule 1-023(B)(1)(a) is entirely appropriate in cases seeking a combination of injunctive, declaratory and monetary remedies, as here.  1 H. Newberg & A. Conte, *Newberg on Class Actions* § 4.08 at 4-26 (3d ed. 1992).  In interpreting the identically-worded federal provision, Newberg observes that neither the text of 23(b)(1)(A) nor the Advisory Committee Notes to the 1966 amendments to Rule 23 "preclude the award of either compensatory or punitive damages to class members." *Newberg* § 4.05 at 4-18 through -19.  Thus, the correct interpretation of the scope of [the subparagraph] is to afford certification "when a major, if not predominant, remedy sought [is] damages for class members." *Id.*

### B.     Rule 1-023(B)(2)

Certification under Rule 1-023(B)(2) should occur when "the party opposing the class

has acted or refused to act on grounds generally applicable to the class, thereby making

appropriate final injunctive relief or corresponding declaratory relief with respect to the class

as a whole[.]"   In this instance, all the defendants have acted or failed to act in a manner that

is generally applicable to the class.   That is, they have charged all title insurance consumers

the same prices.   They have refused to let class members negotiate for better individual

prices.   They have forced consumers to buy coverage which is essentially nonexistent, and

refused to let consumers negotiate for better and broader coverage.   They have all engaged in

price-fixing for title insurance agents, by setting commissions at 78% of premiums, which is

a ridiculously high level.   Then they have all used the high level of commissions as a

supposed  "cost" to justify ever higher rates, even though the 78% commission is far in

excess of any actual and reasonable costs.

Certification under this subparagraph reaches all situations where "settling the

legality of a [defendant's] behavior with respect to the class as a whole, is appropriate."

*Federal Advisory Committee Notes*, subdivision (b)(2) (interpreting identically-worded federal

rule).   Moreover, under this subparagraph, courts certify class actions seeking injunctive as

well as monetary relief.   *Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101 (5th Cir. 1993).

Similarly, here, there is no dispute that First American Title engages in all of the practices

described in the complaint.

### C.     Rule 1-023(B)(3)

Rule 1-023(B)(3) requires, as a prerequisite for class certification, that "questions of

law or fact common to the members of the class predominate over any questions affecting

only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  There is no requirement that common issues be dispositive of the entire litigation.  *Berry*, 2004-NMCA-116, ¶ 48.  Rule 1-023(B)(3) also requires that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

### i.       Common Issues Predominate

This case involves the use of standard form insurance contracts by First American Title and every other title insurer in New Mexico.  Cases involving the meaning and effect of standard printed forms satisfy the predominance requirements of the Rule.  *See, e.g., Berry*, 2004-NMCA-116, ¶¶ 48-67; *Enfield*, 2004-NMCA-115, ¶ 17; *Haroco*, 121 F.R.D. at 668; *Kleiner*, 97 F.R.D. at 683 ("when viewed in light of Rule 23, claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such").  Common issues of law and fact strictly define the scope of this action and thus predominate.  The predominance requirement is easily satisfied.

### ii.      Superiority of the Class Action

Rule 1-023(B)(3) lists four factors "pertinent to the finding" of superiority:  (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the difficulties likely to be encountered in the management of a class action."

The individual class members in this case have little interest in controlling the prosecution of their claims.  Individual damages are relatively small, at least as compared with the cost of litigating those claims individually, so individual class members would therefore have little or no interest in prosecuting these claims except through the class action device.  There is no danger that the class action will interfere with individual interests.  Plaintiffs is not aware of any other litigation filed against First American Title making these same claims.

Here, class certification is essential to vindicate plaintiffs' rights.  Concentrating the claims in this forum will allow the application of one, consistent body of law, reduce the possibility of inconsistent adjudications, and render one all-encompassing ruling regarding First American Title's conduct.

Finally, the class is manageable.  The class is sharply and clearly defined, and all members can be identified.  Their damages can easily be calculated on a uniform basis, based on records kept by the title insurance agency and the title insurer as part of the ordinary course of their business.  Moreover, all title insurers are required by statute to submit annual statements which detail premiums and losses for all of their business within the state.  As an example, see Exhibit 1 hereto.  Since all consumers have been charged the same set of prices, the calculation of damages will be quite uniform.  That damages may easily be mathematically determined supports the conclusion of manageability.  *See Goldwater v. Alston & Bird*, 116 F.R.D. 342, 355 (S.D. Ill. 1987)

Furthermore, since this class action includes only the state of New Mexico, not multiple states, there is no question about the uniformity of the applicable law.  The laws and statutes of New Mexico apply to all members of the class and to all the defendants.

13

While the parties will argue about what the law of New Mexico is, that law applies

uniformly to all title insurance consumers, agents, and insurers in this state.  The

requirements of Rule 1-023(B)(3) are therefore satisfied.

## CONCLUSION

For the reasons stated, this case should be certified as a class action under Rules 1-

023(B)(1), (2), and (3), NMRA 2006.

Respectfully submitted,

VICTOR R. MARSHALL & ASSOCIATES, P.C.

By _____
Victor R. Marshall
Attorneys for Plaintiff
12509 Oakland NE
Albuquerque, New Mexico  87122
505/332-9400
505/332-3793  FAX

14

FIRST JUDICIAL DISTRICT COURT
COUNTY OF SANTA FE
STATE OF NEW MEXICO



2006 MAR 29  PM 2: 11

MAX W. COLL, II and CATHERINE JOYCE-COLL,
Trustees of the Residence Trust of Max W. Coll, II and
Catherine Joyce-Coll, for themselves and all others similarly situated,

     Plaintiffs,

v.                  No. D-0101CV-2006-00689

FIRST AMERICAN TITLE COMPANY, and
its affiliates and its agents in New Mexico;
NEW MEXICO PUBLIC REGULATORY
COMMISSION;  JASON MARKS, DAVID W. KING,
BEN R. LUJAN, LYNDA M. LOVEJOY, AND E. SHIRLEY BACA,
Commissioners of the Public Regulatory Commission;
NEW MEXICO DEPARTMENT OF INSURANCE;  and
ERIC SERNA, Superintendent of Insurance,

     Defendants.

## <u>MOTION FOR CLASS CERTIFICATION</u>

Plaintiffs Max Coll and Catherine Joyce-Coll move the Court to certify this case as a

class action under Rules 23(B)(1), (2), and (3), NMRA 2006, for the reasons stated in the

accompanying memorandum.

Plaintiffs respectfully request that this motion be scheduled for hearing and decision

as soon as practicable after the scheduled time for answering the complaint.

               Respectfully submitted,

               VICTOR R. MARSHALL & ASSOCIATES, P.C.

By_____
               Victor R. Marshall
               Attorneys for Plaintiff
               12509 Oakland NE
               Albuquerque, New Mexico  87122
               505/332-9400
               505/332-3793  FAX

